Filed 6/10/24  P. v. Mangham CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NAHMER SHARONE MANGHAM,<br><br>Defendant and Appellant. | B331500<br><br>(Los Angeles County<br>Super. Ct. No. YA107281) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas R. Sokolov, Judge.  Reversed and remanded with directions.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Shezad H. Thakor, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Nahmer Sharone Mangham pleaded guilty to one count of assault by means of force likely to produce great bodily injury. The trial court placed him on formal probation for two years, after suspending execution of a prison sentence. Mangham obtained a certificate of probable cause and appealed from the judgment. He contends the trial court abused its discretion by denying his pre-plea motion for mental health diversion, pursuant to Penal Code[1] section 1001.36, based on a finding he posed an unreasonable risk of danger to public safety because he was likely to commit a "super strike" offense. We agree with Mangham and reverse the judgment.

## BACKGROUND

### I.    Current Offense and Prior Criminal History

A felony complaint, filed on January 25, 2023, charged 37-year-old Mangham with attempted carjacking. (§§ 215, subd. (a) & 664.) He pleaded not guilty to the charge. We take our account of the circumstances of the offense from the probation report, as the parties also did in their appellate briefing.

On January 23, 2023, in Los Angeles County, Mangham approached a man in a shopping center parking lot, grabbed the man's arm as he was about to open the trunk of his car, and demanded the keys to the car. Fearing for his safety, the man walked backward away from Mangham and tried to obtain help from a passerby. Mangham said he would get a gun if the man did not turn over the keys. Mangham went to the driver's side of the car and attempted to open the front door several times. Next, Mangham told the man he would shoot him if he did not hand

---

[1] Undesignated statutory references are to the Penal Code.

over the keys.[2]  The man refused to give the keys to Mangham, and Mangham walked away.  Officers were called to the scene, and they arrested Mangham.

As set forth in the probation report, Mangham has the following prior convictions:  (1) a 2010 felony conviction for assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)), for which he was sentenced to probation for three years, with some jail time served; (2) a 2010 misdemeanor conviction for trespass—entering and occupying property without consent (§ 602, subd. (m)); (3) a 2016 misdemeanor conviction for battery (§ 242); (4) a 2016 misdemeanor conviction for exhibiting a deadly weapon other than a firearm (§ 417, subd. (a)(1)); and (5) a 2018 felony conviction for second degree robbery (§ 212.5, subd. (c)), arising from a 2016 incident, for which he was sentenced to two years in prison.  For each of the misdemeanors, he was sentenced to jail time.  Each of the three 2016 incidents occurred on a different date.

## II.    Motion for Mental Health Diversion

### A.    Moving papers

On April 17, 2023, Mangham filed a motion for mental health diversion pursuant to section 1001.36.  He stated he was statutorily eligible for diversion, based on the information in an attached report describing his February 23, 2023 psychological evaluation by a forensic and clinical psychologist.

The psychologist stated Mangham had the following diagnoses: schizophrenia, severe cannabis use disorder, severe opioid use disorder, and alcohol use disorder.  (See § 1001.36,

---

[2] There is no indication Mangham had ready access to a firearm.

subd. (b)(1) [eligibility for mental health diversion requires that the defendant "has been diagnosed with a mental disorder," including schizophrenia].) He continued to experience paranoid delusional ideation, even though he had not used substances since his arrest.

As stated in the report, at the time of the current offense, Mangham had been "missing" from a mental health facility in Santa Barbara for a few weeks, and he was not taking his psychiatric medication. When he was arrested, Mangham told the officers he believed he was in Santa Barbara (although he was in Los Angeles County), and he made "nonsensical statements" and changed topics to unrelated subjects. The psychologist opined that Mangham's schizophrenia "played a significant role in [his] commission of the instant offense." (§ 1001.36, subd. (b)(2) [eligibility for mental health diversion requires that the "defendant's mental disorder was a significant factor in the commission of the charged offense"].)

The psychologist set forth in her report the reasons she believed Mangham's "symptoms motivating the criminal behavior would respond to mental health treatment," and she explained how the recommended treatment (residential treatment) would meet his specialized needs. (See § 1001.36, subd. (c)(1) [suitability for mental health diversion requires, "In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment"].) She also stated Mangham was amenable to treatment, and he was "motivated and able to learn from his mistakes." (See § 1001.36, subd. (c)(3) [suitability for mental health diversion requires that the "defendant agrees to comply with treatment as

4

a condition of diversion"].) Mangham attached to his motion a conditional letter of acceptance into a residential treatment program.

The psychologist administered the Violence Appraisal Guide risk assessment and determined Mangham had a low risk for future violent behavior and dangerousness to the community. (See §§ 1001.36, subd. (c)(4) [suitability for mental health diversion requires that the "defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community"] & 1170.18, subd. (c) [" 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667," i.e., a "super strike" offense].) One of the considerations for this assessment was his criminal history.

The district attorney did not file an opposition to Mangham's motion for mental health diversion.

**B.     The hearing**

On June 7, 2023, the trial court held a hearing on the motion. Defense counsel updated the court on Mangham's recent acceptance into a "locked," 12-month residential program administered by the department of mental health, and his plan to live with his mother thereafter.

The trial court expressed concern about granting mental health diversion, citing a "risk of harm" to the public, based on the "very serious" nature of the current offense and, more importantly, Mangham's "[p]rior record of violence or attempted violence or propensity for violence." Regarding the current offense, defense counsel noted that Mangham walked away,

5

without inflicting injury on the victim.  Regarding the prior criminal history, defense counsel argued it did "not involve any actual violence," and it did not indicate Mangham was likely to commit a "super strike" (the measure of "unreasonable risk of danger to public safety" in § 1001.36, subd. (c)(4)).  The deputy district attorney informed the court that the prosecution did not oppose Mangham's motion for mental health diversion in light of the facts of the current offense, his acceptance into a program at a "locked facility," and the "high burden" of showing he posed an unreasonable risk of danger to public safety.

The trial court denied the motion, stating that Mangham's record shows "a pattern of violence or possible violence that makes the court feel there's a likelihood that he could commit a super strike."  The court also noted that in the current offense, Mangham grabbed the victim's arm and threatened to retrieve a gun and shoot him; and the victim feared for his life.

### III.  Guilty Plea

The same day as the hearing on the motion for mental health diversion, the trial court granted the prosecution's motion to amend the complaint to add a count for assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 2).  Mangham waived his constitutional rights, withdrew his not guilty plea, and pleaded guilty to the amended charge. He also admitted he had served a prior prison term under section 1170, subdivision (h), within the meaning of California Rules of Court, rule 4.421(b)(3).  Under the terms of the plea negotiation, the trial court suspended execution of a middle term prison sentence of three years and placed Mangham on formal probation for two years.  The terms and conditions of probation included that Mangham serve 300 days in jail, with credit for 272 days,

and that he cooperate with the probation department for placement at the mental health facility, where he would serve the remainder of the jail time. The trial court dismissed count 1 for attempted carjacking.

Mangham filed a timely notice of appeal from the judgment, stating he was challenging the denial of the motion for mental health diversion. The trial court granted his request for a certificate of probable cause.

## DISCUSSION

Mangham contends the trial court erred in denying his motion for mental health diversion, arguing there was nothing in his record indicating he posed an unreasonable risk to public safety (i.e., he was likely to commit a super strike offense).

Diversion under section 1001.36 "allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment." (*Sarmiento v. Superior Court of San Diego County* (2024) 98 Cal.App.5th 882, 890 (*Sarmiento*).) One of the express purposes of the legislation is "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety." (§ 1001.35, subd. (a).)

"[M]ental health diversion requires trial court findings that the defendant is both *eligible* for diversion and *suitable* for the program. The criteria for each are specified in the statute. (§ 1001.36, subds. (b) & (c).) Defendants are eligible if they have been diagnosed with a recognized mental disorder that was a significant factor in the commission of the criminal offense with which they are charged. (*Id.*, subd. (b).) They are suitable if: (1) in the opinion of a qualified mental health expert, the defendant's

mental disorder would respond to treatment; (2) the defendant agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an 'unreasonable risk of danger to public safety' as defined in sections 1170.18 and 667, subdivision (e)(2)(C)(iv). (§ 1001.36, subd. (c).)" (*Sarmiento, supra*, 98 Cal.App.5th at p. 891.)

This appeal concerns only the fourth suitability criterion listed above—no unreasonable risk of danger to public safety—as there is no dispute here that Mangham has shown he is eligible for mental health diversion and meets the first three suitability criteria. Unreasonable risk of danger to public safety means "a likelihood that if the defendant is granted diversion, [he or] she will commit one of the 'super strike' violent felonies enumerated in section 667, subdivision (e)(2)(C)(iv)," including, but not limited to, a homicide or attempted homicide offense, solicitation to commit murder, a sexually violent offense, or a sexual offense against a minor under the age of 14. (*Sarmiento, supra*, 98 Cal.App.5th at p. 895; *People v. Moine* (2021) 62 Cal.App.5th 440, 449-450 (*Moine*).)[3] In deciding whether a defendant poses an unreasonable risk of danger to public safety, the "court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the

---

[3] "A defendant may not be placed into a diversion program" if his or her current charged offense is one of a number of super strike offenses specifically enumerated in the diversion statute. (§ 1001.36, subd. (d).) Mangham's charged offense did not so disqualify him from the diversion program.

current charged offense, and any other factors that the court deems appropriate."  (§ 1001.36, subd. (c)(4).)

If "the defendant satisfies the eligibility requirements," and "the court determines that the defendant is suitable for [pretrial] diversion," the trial "court may, in its discretion, and after considering the positions of the defense and prosecution, grant pretrial diversion to [the] defendant."  (§ 1001.36, subd. (a).)  The court must exercise its discretion "consistent with express statutory requirements and the underlying purposes of mental health diversion . . . ."  (*Sarmiento*, *supra*, 98 Cal.App.5th at pp. 895-896.)  "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation]."  (*Moine*, *supra*, 62 Cal.App.5th at p. 449.)  We review a trial court's finding that a defendant poses an unreasonable risk of danger to public safety for substantial evidence.  (*Sarmiento*, at p. 897; *People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1150 (*Whitmill*).)

We conclude the trial court abused its discretion in denying mental health diversion, as there is no substantial evidence supporting the court's finding that Mangham was unsuitable because he was likely to commit a super strike if the court granted diversion.

The psychologist who evaluated Mangham found him suitable for mental health diversion, considering the current offense, his criminal history, and the proposed treatment plan. After administering a standardized assessment tool, the psychologist determined Mangham had a low risk for future violent behavior and dangerousness to the community.  In

9

explaining to the trial court why it did not oppose diversion, the prosecution referenced the facts of the current offense, that Mangham was accepted into a "locked" residential treatment facility, and the "high burden under the mental health diversion statute of proving that the defendant . . . poses a risk to commit a super strike."

In the current offense, Mangham did not use a weapon. Although he grabbed the victim's arm, he did not inflict any physical injury. He voluntarily walked away when the victim refused to hand over the keys to the car. Mangham's *threat* to go get a gun and come back and shoot the victim does not show the requisite *likelihood* that Mangham would commit a super strike (e.g., a homicide or attempted homicide offense) if granted diversion and treated in the community. (See *Whitmill*, *supra*, 86 Cal.App.5th at pp. 1143, 1156 [the circumstances of the defendant's charged offenses, including that he fired a gunshot into the air and threatened to kill his girlfriend, did not constitute substantial evidence "support[ing] the trial court's finding that [he] posed an unreasonable risk of committing a super strike if treated in the community"]; *Moine*, *supra*, 62 Cal.App.5th at pp. 444-445, 451 [the circumstances of the defendant's charged offenses, including that he engaged in a fistfight with another patient in an urgent care facility and threatened to go get a gun from his home and shoot everyone in a different urgent care facility a year later, did "not support the trial court's implied finding that [he] was likely to commit a super-strike offense if he received mental health treatment in the community"].)

The Attorney General argues that *Whitmill* and *Moine* are distinguishable because in those cases, the defendants did not

have a prior history of violent conduct.  Mangham has a 2010 felony conviction for assault with an (unspecified) weapon other than a firearm; a 2016 misdemeanor conviction for battery; a 2016 misdemeanor conviction for exhibiting an (unspecified) deadly weapon other than a firearm; and a 2018 felony conviction for second degree robbery, arising from a 2016 incident, for which he was sentenced to two years in prison.  Mangham's criminal history does not include a super strike offense, and there is no evidence he has ever inflicted physical injury upon anyone.  While it is *possible*, nothing in the record before us indicates Mangham is *likely* to use deadly force against someone while undergoing treatment in the community in a locked residential facility.  We note that the trial court did not execute a prison sentence, but rather deemed Mangham suitable for probation, a condition of which was that he agree to placement in the same facility where he would have been placed if the court granted diversion.

The trial court abused its discretion in denying mental health diversion because it based its decision on a finding not supported by substantial evidence.  The positions taken below by the defense, the prosecution, and the psychologist who evaluated Mangham are consistent with the evidence in the record before us:  Mangham is eligible and suitable for mental health diversion.  If he successfully completes mental health treatment, the charges against him should be dismissed.  (§ 1001.36, subd. (h).)

## DISPOSITION

The judgment is reversed, and the matter is remanded with directions that the trial court grant Mangham's motion for pretrial mental health diversion under section 1001.36.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.

WEINGART, J.